UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Charlotte Porter,　　　　　　　　　　　)
　　　　　　　　　Plaintiff　　　　)
　　　　　　　　　　　　　　　　　　　)
　　v.　　　　　　　　　　　　　　　　)　　　　Case No. 09-1370
　　　　　　　　　　　　　　　　　　　)
The Law Office of Charles G. McCarthy,　)
Jr. & Associates,　　　　　　　　　　　)
　　　　　　　　　Defendant　　　　)

**ORDER and OPINION**

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the court is the Plaintiff's motion for summary judgment (#20) and the Defendant's motion to dismiss (#24). These motions are fully briefed and I have carefully considered the evidence and arguments presented by the parties. As stated herein, the Defendant's motion is granted and the Plaintiff's motion is denied.

The parties agreed to resolve this matter by cross motions rather than by trial. As mentioned, Plaintiff has filed a motion for summary judgment, while Defendant has filed a motion to dismiss. Because Defendant's motion to dismiss relies on evidence outside of the pleadings, it is not properly a motion to dismiss under Fed.R.Civ.P. 12 but a motion for summary judgment under Fed.R.Civ.P. 56. The Court believes that the Defendant's caption on this motion was an error and that Defendant intended that the motion be brought under Rule 56. The Defendant's motion is therefore deemed to be one for summary judgment. Fed.R.Civ.P. 12(d). Because the time for discovery has passed and Defendant has submitted evidence to the Court in support of his motion, it is not necessary to

1

provide further opportunity to conduct further discovery or to present additional information.

## STATEMENT OF FACTS

The following facts are taken from the parties' motions and the responses and reply thereto.

In July of 2009, Charlotte Porter made a purchase from Home Decor Liquidators. She signed a retail installment contract, which stated that the contract "will be assigned" to Kahuna Payment Solutions ("Kahuna"). The contract showed that the cash price was $1054.27 less the down payment of $159.87. The balance - $894.40 - was financed with 11 monthly payments of $159.90 due to Kahuna. The truth in lending disclosure statement showed that the amount financed ($894.40) plus the finance charge ($864.50) totaled a sale price of $1918.77.

The installment contract included the following provision:

> DEFAULT CHARGES: If any payment is more than 10 days late, buyer will be charged $10.00 or 5% of the payment, whichever is more. To the extent permitted by law, buyer agrees to pay reasonable attorney's fee, court costs and collection costs, after default and referral to an attorney not a salaried employee of the Seller or his assignee.

Porter allegedly did not make the first payment due to Kahuna, and in August of 2009, Kahuna assigned the debt for collection to The Law Office of Charles G. McCarthy Jr. & Associates (herein the "Law Firm").

On August 26, 2009, the Law Firm sent Porter a letter on the Law Firm's letterhead. It identified Kahuna as the creditor and showed the original amount of the debt ($1918.77), an amount for Attorney Fees ($767.51), adding those two amounts to reach a TOTAL amount being sought ($2686.28). The body of the letter read in pertinent part as follows:

> This firm represents the above referenced creditor in the matter of your unpaid account. This debt is overdue and we will use all legally appropriate means for collection. If there is some dispute as to the amount of this claim, we will consider any information you wish to give us. We are also prepared to work out a reasonable

payment plan ... No determination has been made at this time whether this claim will result in the filing of a lawsuit. It is our hope that this matter will be resolved without court action. If a decision to sue is made, the claim will be forwarded to an attorney in the appropriate venue.

Very truly yours,
**Charles G. McCarthy, Jr. & Associates."**

On September 14, 2009, another letter was sent[1] to Plaintiff. This letter read in its entirety:

**Law Offices of Charles G. McCarthy, Jr. & Associates - Attorneys at Law**
Licensed in Illinois and Minnesota
PO Box 1045                                                             Phone: (800) 866-6080
Bloomington, IL 61702        www.charlesgmccarthy.com     Fax: (309) 829-4136

Charlotte Porter                        417544
[address deleted]

RE: Kahuna Payment Solutions, LLC                      October 14, 2009
       (Original Creditor)

Our File Number: 417544

Amount Claimed: $2686.28

       Recently you requested information to support our client's claim. Enclosed is the documentation to verify this debt.

       It is our client's desire that this matter be concluded amicably, but a resolution must be forthcoming without delay to avoid further collection action.

       The purpose of this letter is to collect a debt and any information obtained will be used for that purpose.

       Enclosed is an envelope to send us your check payable to the creditor by 09-30-09.

---

[1] The pleadings state that this letter was sent by Jacqueline Hawkins. Her relationship to the Law Firm is not stated, either in the pending motion or in the record to which the motion refers. Because the parties have ascribed no significance to this fact, neither does the Court.

Very truly yours,

CHARLES G. MCCARTHY & ASSOCIATES

IMPORTANT:

Make check payable to: Kahuna Payment Solutions, LLC

Mail to: CHARLES G. MCCARTHY & ASSOCIATES

A third letter dated October 14, 2009 was sent to Plaintiff. This letter appeared on the same Law Firm letterhead. The bottom of the letter instructed the recipient to "Detach Lower Portion and Return with Payment." This portion of the letter showed the "Total Amt Owed" as $2686.28. The body of the letter read as follows:

| | |
|---|---|
| Our File Number: | 417544 |
| Original Amount: | $1918.77 |
| Interest: | $    0.00 (as of October 14, 2009) |
| Attorney Fees: | $  767.51 |
| Court Cost: | $    0.00 |
| Collection Costs: | $    0.00 |
| **Total Amount Owed:** | **$2686.28** |

Please be advised that your file has come up for review and no progress has been made on your account to resolve this matter.

You may contact my office within the next 10 (ten) business days to set up a suitable payment arrangement.

If you do not contact my office to make arrangements to get this matter settled, I may have no other choice than to pursue legal action against you, which may incur more costs for you.

Please contact my office, toll-free, at 800-866-6888 to discuss this matter.

This communication is from a debt collector. The purpose of this letter is to collect a debt and any information obtained will be used for that purpose.

Sincerely,

**Charles G. McCarthy, Jr. & Associates**

Plaintiff filed this litigation on Nov. 2, 2009. She alleges[2] that the letters contain a threat to

---

[2]Originally, her complaint included allegations that Defendant "constantly and continuously placed collection calls" that were also in violation of the FDCPA. The complaint, however, contained no explicit claim for those violations, and in the proposed Final Pretrial

file a lawsuit and a claim for attorney's fees that violate sections 1692e(2)(A) and e(5) of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.1692 *et seq*. She seeks statutory damages, attorney's fees and costs.

**DISCUSSION**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered if and only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Jay v. Intermet Wagner Inc., 233 F.3d 1014, 1016 (7th Cir.2000); Cox v. Acme Health Serv., 55 F.3d 1304, 1308 (7th Cir. 1995).

This case presents two issues: whether Defendant violated the FDCPA by including in the amount of debt an amount for attorney's fees and by threatening to file suit. The FDCPA broadly prohibits "false, deceptive, or misleading representation" in connection with debt collection. 15 U.S.C. § 1692. Sixteen separate violations are enumerated in 15 U.S.C. 1692e(1)-(16), although that list is not exhaustive: the same section expressly states that the subsections do not limit the applicability of the preliminary language. Id.

Whether a representation violates the statute is judged from the view of an "unsophisticated consumer. In Gammon v. GC Svcs. Ltd. P'ship, 27 F.3d 1254, 1257 (7th Cir. 1994), the Seventh Circuit rejected the terminology "least sophisticated consumer standard" that had been used by many courts, noting that such a standard would of necessity read out any rudimentary element of

---

Order, Plaintiff has made it clear that she has abandoned any claims arising from telephone calls. See Document #18, at Part IV(A).

reasonableness. Instead, the Seventh Circuit believed that the phrase "unsophisticated consumer" more accurately described the uninformed, naive or trusting consumer, but it imports the objective element of reasonableness into that description. It assumes that the consumer possesses "rudimentary knowledge" about finances and is capable of making "basic logical deductions and inferences." Durkin v. Equifax Check Svcs., Inc., 406 F.3d 410, 414 (7th Cir. 2005). In short, the unsophisticated consumer is not a "dimwit." Wahl v. Midland Credit Mgmt., Inc., 556 F.3d 643, 645 (7th Cir.2009).

Section 1692e(2)(A) of the FDCPA makes it a violation to falsely represent the "character, amount, or legal status of any debt." In Fields v. Wilber Law Firm, P.C., 383 F.3d 562 (7th Cir. 2004), a debt in default was assigned to an attorney for collection. In the collection letters sent to the debtor, the attorney stated the account balance as an amount nearly triple the original debt. This account balance was reached by adding to the amount of the original debt - a set amount of attorney's fees and interest. The collection letter did not, however, itemize how this account balance was reached; it simply stated the new total of the amount owed.

The Court of Appeals found that it was not a violation of the statute for the attorney to have added reasonable attorney's fees, because the contract signed by the debtor included the following clause: "I understand that if collection action should become necessary for recovery of any monies due under this contract, I agree to pay any and all collection costs and attorney fees."

The Fields Court went on, however, to find fault with the defendant's failure to reveal the amount of fees separately from the amount of the original debt, concluding that this was a statutory violation. An unsophisticated consumer could well be misled by the practice of hiding additional charges in the account balance. The Court identified a "simple way" to avoid such misleading: itemizing the various charges that comprise the total amount of the debt. Id. at 566.

6

Itemizing is what the Law Firm did in the August and October letters, each of which stated separately the amount of the original debt and the amount of the attorney's fees, adding them together for the total amount due. Under Fields, this itemization, along with the provision in the installment contract allowing for collection of attorney's fees, means that including a claim for attorney's fees in these two letters did not violate the relevant section of the FDCPA.

The September letter, however, did not itemize; it simply stated the "Amount Claimed" as $2686.28, an amount which included both the original debt and the attorney's fees. This second letter, claims Plaintiff, violated the FDCPA in the same way as did the letter in Fields: by hiding the true amount of the debt and impairing the debtor's ability to assess the validity of the debt.

Fields does not compel this conclusion. In Fields, the debtor never received a letter that itemized the amount of the original debt separately from the claimed attorneys fees. Instead, the sole collection letter stated only a total amount due, thereby hiding the amount that had been added for attorney's fees. Adding to the problem was the fact that this single letter was sent nearly 8 months after the debt was incurred.

In contrast, two out of the three letters sent to Porter by the Law Firm properly itemized the elements that added up to the total debt claimed. Only one month before she received the first letter, she had agreed to pay attorney's fees if her account went into default. All three letters were sent and received during the 3 month span immediately following the date on which she incurred the debt. Even an unsophisticated consumer would not be misled or confused about the amount of debt under such circumstances. The concerns raised by Fields and quoted by Plaintiff simply do not come into play.

Plaintiff also relies Miller v. McCalla Raymer Padrick Cobb Nichols and Clark, LLC, 214

7

F.3d 872 (7th Cir.), where the Court rejected the proposition that the FDCPA is satisfied if a creditor simply provides a telephone number the consumer can call to find out the total amount of debt being sought. Once again, however, in Miller, there was a single dunning letter, and that letter did not state the amount of the debt; it simply provided a telephone number. This factual distinction is important when looking at how an unsophisticated consumer might reasonably interpret - or misinterpret - a collection letter.

Plaintiff does not challenge the reasonableness of the amount of fees sought. She concedes that the contract allowed imposition of reasonable attorney's fees "after default and referral to an attorney." Neither of those issues is in dispute. Under the circumstances discussed above, I find that a reasonable, unsophisticated consumer would not be misled by the failure of the second letter to break out the amount of attorney's fees from the total amount being claimed. The second letter did not violate the FDCPA by mis-stating or mis-characterizing the amount of the debt.

Before addressing Plaintiff's second claim, a preliminary comment must be made. Page 9 of Plaintiff's motion asserts in two different places two statements that are completely immaterial to the issues raised in this case, statements that in addition are wholly untrue. These are statements that "Defendant is not a law firm" and that "the letters had not been reviewed by an attorney." In its response, the Law Firm clearly asserts that these are completely untrue statements and that Charles McCarthy is an attorney and that Charles G. McCarthy and Associates is a Law Firm. In Plaintiff's reply brief, she does not respond to this issue at all.

If these mis-statements were the result - as kindly suggested by Defendant - of a "cut and paste" error, then the reply brief should have withdrawn the statements and apologized to the Court and to opposing counsel for the error. The Court will presume that their inclusion in the motion was

an unintentional error that will not be repeated.

The second statutory violation Plaintiff claims is that the collection letters violate section 1692e(5), which prohibits "[t]he threat to take any action ... that is not intended to be taken. Plaintiff argues that the letters threaten to take an action that the debt collector did not intend to take, namely file a lawsuit to collect the debt. In neither the complaint nor her motion, however, does Plaintiff identify any specific statements that she alleges constitute such a threat; she simply states that "in totality" the letters "demonstrate a threat of legal action."

The Court has reviewed the three letters and finds that the following statements are pertinent to this argument.

- The first letter states that Defendant "will use all legally appropriate means for collection," and concluded by stating, "No determination has been made at this time whether this claim will result in the filing of a lawsuit. It is our hope that this matter will be resolved without court action. If a decision to sue is made, the claim will be forwarded to an attorney in the appropriate venue."

- The second letter states, "It is our client's desire that this matter be concluded amicably, but a resolution must be forthcoming without delay to avoid further collection action."

- the third letter states, "If you do not contact my office to make arrangement to get this matter settled, I may have no other choice than to pursue legal action against you, which may incur more costs for you."

Without question, the first statement in the first letter implies imminent litigation. The threat to use all legal means, when made by an attorney, would certainly suggest to an unsophisticated debtor the imminence of litigation. Similarly, a threat to recommend referral to an attorney has been found to be an implicit threat to sue. <u>Drennan v. Van Ru Credit Corp.</u>, 950 F. Supp. 858 (N.D.Ill.1996). While the second statement in the first letter appears to negate the first, it does not stand in isolation. When a collection letter is inconsistent or internally contradictory, it has been held to violate the FDCPA as a matter of law. See, <u>avila v. Rubin</u>, 84 F.3d 222, 226-27 (7th Cir. 1996)

9

because the inconsistencies would confuse a reasonable, unsophisticated debtor.

Moreover, those inconsistent statements were followed shortly by a threat of "further collection action." While to a lawyer such an ambiguous statement might appear innocuous, to the unsophisticated debtor litigation might well be the only "further" action that would come to mind. See, Johnson v. Revenue Mgt Corp., 169 F.3d 1057, 1060 (7th Cir. 1999).

The third letter too threatens the pursuit of "legal action against you," clearly a reference to litigation. It is true that the letter states this "threat" conditionally, and in one case, the Seventh Circuit found frivolous a claim arising from a letter that said the debt "may" be increased by the addition of interest, even though no interest had been added. Taylor v. Cavalry Inv. L.L.C., 365 F.3d 572, 575 (7th Cir. 2004). The statement in Taylor is much different than the one in the letter Porter received, which used three of these qualifying words in three different clauses of the same sentence. The statement's meaning was thereby rendered unclear, at least to an unsophisticated debtor who may well not grasp the import of these conditional words, seeing only the threat.

Courts have found litigation threats, even in indirect or oblique statements, provided they imply legal action is underway or contemplated in the near future. See, Francis v. Snyder, 389 F.Supp.2d 1034, 1040 (N.D.Ill.,2005); Jenkins v. Union Corp., 999 F.Supp. 1120, 1136 (N.D.Ill.1998). When a collection letter comes from an attorney, any reference to litigation likely would signal to an unsophisticated consumer that a lawsuit is imminent. See Avila v. Rubin, 84 F.3d 222, 229 (7th Cir. 1996) ("An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up."); Jenkins, 999 F.Supp. at 1137 ("[I]n cases where the likelihood of legal action is not clear from the language, the letter's source can be determinative, especially if it purports to be from an attorney."); United States v. Nat'l Financial Svcs., 98 F.3d 131, 136 (4th

10

Cir.1996) ("[T]o most consumers, the relevant distinction between a collection agency and an attorney is the ability to sue....");.

Because of the language contained in the letters and because the letters came from an attorney, I conclude that the three letters would appear, to the unsophisticated yet reasonable debtor, to contain a threat of litigation. But that is not enough for the claim to succeed. Threats by debt collectors to sue the delinquent debtor do not violate the FDCPA, unless the threats are empty threats, made when litigation was not actually intended..

Plaintiff relies on Drennan v. Van Ru Credit Corp., 950 F. Supp. 858 (N.D.Ill.1996), to demonstrate that inaction by the creditor demonstrates lack of intent to sue. In Drennan, the letters included the following language: "The legal review process may result in a recommendation to your creditor to file a lawsuit against you. Should our client authorize suit, your account may be referred to an attorney in your county to file suit at once for the above claim." Despite that language, the creditor had not filed suit within the one year period following the first letter and the nine month period following the second letter. The Court found that the creditor's failure to file suit after making threats to do so "lead to the reasonable inference" that the creditor did not intend to take the threatened action. Id. at 861[3]. Compare, Wilkins v. Global Credit & Collection Corp., - F.Supp. 2d -, Case No. 10-CV-00318, 2011 WL 833999, March 4, 2011 (N.D.Fla.)(distinguishing Drennan because a one month period of inaction was insufficient to infer lack of intent). See also, U.S. v. National Financial Svcs., Inc., 98 F.3d 131, 137 n.3 (4th Cir. 1996)("There must be a particularized

---

[3] Drennan was decided on a motion to dismiss, not a motion for summary judgment. The Drennan Court was nonetheless confident that the periods of elapsed time inevitably did demonstrate a lack of intent. Here, where the parties have completed discovery and agreed to resolve the case by cross motions, all their evidence is before the Court, so it is proper for this Court to draw a definitive conclusion regarding intent.

intention to sue a particular debtor if he or she does not pay.").

In Drennan, the plaintiff received his letters on September 14 and December 16, 1995. He filed his lawsuit on September 11, 1996. The Court looked at the period of time that elapsed between the receipt of the letters and the filing of the lawsuit to determine "inaction." In this case, Porter received her three letters on August 26, September 14 and October 14, 2009. She filed this lawsuit on November 2, 2009. Hence, the periods of inaction that are relevant here are 1, 2 and 3 months. I agree with the Court in National Financial Svcs. supra, that such short periods of time are inadequate to demonstrate that Defendant's threat to sue was an empty one.

Plaintiff suggests that the creditors failure to sue while this FDCPA litigation is pending indicates lack of intent as well. No authority is cited for that proposition, which is understandable. A creditor who brought suit in apparent response to the filing of a FDCPA action would appear to be acting in retaliation. Placing creditors between such a rock and a hard place is not what the statute intends when it prohibits empty threats.

Other than the period of inaction, Plaintiff has put before the Court no evidence demonstrating lack of intent to sue. Because Plaintiff does bear the burden of proof, this lack of evidence at the summary judgment stage is fatal to her claim Accordingly, I conclude that, while the letters did contain what an unsophisticated debtor might reasonably construe as a threat to sue, there is no evidence sufficient to support an inference that the threat was an empty one. Without such evidence, the threat to sue does not violate section 1692e(5) the FDCPA.

**CONCLUSION**

As stated herein, the Plaintiff's motion for summary judgment is DENIED and the Defendant's motion to dismiss (construed as a motion for summary judgment) is GRANTED. The Clerk is directed to enter judgment in favor of the Defendant and against the Plaintiff. This case is terminated.

ENTERED ON  August 2, 2011

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE